**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WM MOBILE BAY ENVIRONMENTAL CENTER, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CASE NO.:  13-434** |
| **THE CITY OF MOBILE SOLID WASTE AUTHORITY,** | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

**SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), WM Mobile Bay Environmental Center, Inc. ("WM Mobile Bay") amends its previously filed Amended Complaint (Doc. 18) against the City of Mobile Solid Waste Authority ("the Authority") by clarifying the allegations in Count II and adding Count XI, so that the Complaint now reads in its entirety as follows:

**JURISDICTION AND VENUE**

1. Plaintiff WM Mobile Bay is a foreign corporation, incorporated in the State of Delaware and having its principal place of business in Madison, Mississippi, that is qualified to do business in the State of Alabama.

2. Defendant Authority is an autonomous authority of the City of Mobile created pursuant to Ala. Code §§ 11-89A-1 *et seq.* and City of Mobile Resolution No. 60-194, dated May 7, 1985.  Defendant Authority was incorporated as an Alabama non-profit corporation on May 8, 1985, and has its principal place of business in Mobile, Alabama.

3.      This is an action for breach of contract in which damages exceed the sum or value of $75,000, exclusive of interest and costs.

4.      This Court has original jurisdiction of this cause, pursuant to 28 U.S.C. § 1332, because there exists complete diversity of citizenship of the parties and the amount in controversy exceeds the jurisdictional limit of this Court.

5.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because the Defendant is located in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## FACTS

6.      On or about October 6, 1993, the Authority entered into that certain Solid Waste Management Contract ("the Contract") with Transamerican Waste Industries, Inc. ("Transamerican") for the management and operation of a solid waste disposal facility in the Chastang community near Mount Vernon, Alabama.  A copy of the Contract is attached hereto as Exhibit A and incorporated herein.[1]

7.      WM Mobile Bay is the successor-in-interest to all rights and obligations of Transamerican under the Contract.

8.      WM Mobile Bay has performed all obligations and conditions precedent required of it under the terms of the Contract.

9.      The Authority is in material breach of its obligations under the terms of the Contract, including but not limited to a breach of its Covenant of Good Faith and Fair Dealing set forth in Section 1.31 of the Contract, as will be more fully described below.

---

[1] WM Mobile Bay's file copy of the Contract did not include Exhibits 1 and 2 to the Contract.  After requesting copies of the exhibits from the Authority, WM Mobile Bay received incomplete copies of Exhibits 1 and 2 to the Contract from the Authority's counsel on January 11, 2012.  Those copies are included in Exhibit A hereto and are incorporated herein.

10.     The "Service Area" for the Contract is defined as follows:

> The geography area of the Landfill under this Contract shall be the Solid Waste generated in the City and the unincorporated areas of Mobile County, Alabama, including all municipalities therein, who elect to use the Landfill.

(Contract, Section 1.4.)

11.     The Authority is obligated under the Contract to work with WM Mobile Bay to expand the Service Area if doing so is beneficial to the citizens of Mobile.

12.     The Authority has failed and refused to work with WM Mobile Bay in good faith, as required by the Contract, to expand the Service Area of the Contract, despite the demonstrated benefits of the expansion to the citizens of Mobile, as will be more fully described below.

13.     In consideration for the operation and management services provided by WM Mobile Bay under the terms of the Contract, the Authority is obligated to pay WM Mobile Bay $20 per ton for each ton of solid waste delivered to the landfill by the Authority.

14.     In addition, in consideration for hauling services, the Authority is obligated to pay WM Mobile Bay $9.85 per ton for each ton of material delivered by the Authority to a transfer station and hauled to the landfill by WM Mobile Bay or one of its affiliates.

15.     Under the terms of the Contract, WM Mobile Bay is also permitted to accept solid waste generated within the Service Area from other parties and to negotiate rates for the disposal of such solid waste at the landfill.

16.     Under the terms of the Contract, WM Mobile Bay is also permitted the right to itself dispose at the landfill solid waste that is generated within the Service Area.

17.     The Contract includes the following provision for the payment of royalties by WM Mobile Bay to the Authority:

The Contractor agrees to pay the Authority royalties in the amount of 5% of the gross revenue received by the Contractor from all Solid Waste deposited at the Landfill by the City or by third parties during the term of this Contract.  This royalty shall be payable quarterly, based on gate proceeds, out of proceeds actually received by Contractor.

(Contract, Section 6.2.)

18.     There is no provision in the Contract for the payment of royalties to the Authority

for solid waste deposited by WM Mobile Bay or one of its hauling affiliates.

19.     The Contract also includes the following provision relating to price adjustments:

The Contractor and the Authority recognize that during the life of this Contract many circumstances may arise which cannot be predicted or foreseen.   It is the intent of this Section to set forth reasonable expectations as to the items which could produce these circumstances, and to provide a means of arriving at adjustments in Payments or compensation hereunder to Contractor to reflect the resulting cost impacts.

Except as otherwise provided herein, the per ton fees payable to Contractor shall not be adjusted during the first two Contract Years.  Each Contract Year thereafter, such fees shall, at the request of Contractor, be adjusted to reflect the change in the cost of Contractor doing business hereunder in an amount to be mutually agreed upon by Contractor and the Authority, not to exceed the change in the Consumer Price Index, or the Competitive Price Index, whichever is the lowest.

Said negotiations may include, but not necessarily be limited to, the following situations:

(i)     compensation to Contractor for the design and/or construction of on-site betterments;

(ii)    material changes in tonnage delivered to the Landfill or the Transfer Station;

(iii)   changes in labor and/or equipment requirements or rates;

(iv)    unexpected cost changes by Contractor.

The adjusted proposal price resulting from said negotiations shall include compensation for all labor, equipment and materials necessary to perform this Contract as may be amended by said negotiations.

(Contract, Section 6.6.)

      20.    Despite WM Mobile Bay's repeated requests, the Authority has failed and refused to negotiate in good faith for price adjustments pursuant to the terms of the Contract and the parties' reasonable expectations stated therein, as will be more fully described below.

      21.    The Contract also includes the following provision relating to additional price adjustments:

> Notwithstanding any provision in this Contract to the contrary, the Authority shall reimburse Contractor for any increases in Contractor's costs due to laws, rules, regulations or ordinances that become effective or have different interpretations after the date this Contract is entered into and that have an adverse impact on Contractor hereunder.

(Contract, Section 6.6.)

      22.    The Authority has failed and refused to reimburse WM Mobile Bay for increases in costs, pursuant to this provision of the Contract, as will be more fully described below.

      23.    The Contract also includes the following provision relating to additional price adjustments:

> Furthermore, in the event that Contractor incurs any material increase in costs as a result of events which it could not reasonably foresee which arise after the date this Contract is entered into and which are beyond the reasonable control of the Contractor (including price increases, operating cost increases, reductions in revenue expectations, reduction in volume of the Mobile Waste Stream deposited at the Landfill below the represented figures in the RFP, equipment or repair costs or other similar items), such that either Contractor's purpose in entering into this Contract shall be frustrated or its performance hereunder or its financial expectations from this Contract would be adversely affected, there shall be an immediate equitable adjustment of the rates and/or other compensation ("Equitable Rate Adjustment") paid under this Contract by the Authority to the Contractor so as to compensate Contractor for such increased costs, in the manner as shall otherwise be provided herein.

(Contract, Section 6.6.)

24.     The Authority has failed and refused to grant "Equitable Rate Adjustments," pursuant to this provision of the Contract, as will be more fully described below.

25.     On or about September 30, 2010, WM Mobile Bay made a formal request for a price adjustment relating to its landfill operations under the Contract, pursuant to Section 6.6 of the Contract. In addition, WM Mobile Bay requested a price adjustment relating to its transfer station operation, pursuant to Section 6.6 of the Contract. WM Mobile Bay also requested reimbursement for betterment projects and unforeseen costs at the landfill, as well as cost increases due to changes in regulations, pursuant to Section 6.6 of the Contract.

26.     The Authority failed and refused to negotiate in good faith regarding WM Mobile Bay's reasonable requests for a price adjustment, and in fact, failed to provide any response to WM Mobile Bay's request at all. The Authority's refusal to negotiate in good faith constitutes a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

27.     On or about November 2, 2011, WM Mobile Bay made a formal request for a price adjustment relating to its landfill operations under the Contract, pursuant to Section 6.6 of the Contract. In addition, WM Mobile Bay requested a price adjustment relating to its transfer station operation, pursuant to Section 6.6 of the Contract. WM Mobile Bay also requested reimbursement for betterment projects and unforeseen costs at the landfill, as well as cost increases due to changes in regulations and an equitable adjustment due to a reduction in volume, pursuant to Section 6.6 of the Contract.

28.     The Authority failed and refused to negotiate in good faith regarding WM Mobile Bay's reasonable requests for a price adjustment. The Authority's refusal to negotiate in good

faith constitutes a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

29.     On or about December 27, 2011, WM Mobile Bay wrote to the Authority requesting the Authority to work with WM Mobile Bay to expand the Service Area, providing information requested by the Authority to justify the expansion.  This information demonstrated that the Service Area expansion was also beneficial to the citizens of Mobile by increasing revenues to the Authority without increasing any costs.  The information also demonstrated that the Service Area expansion would have no detrimental effect on the long-term viability of the landfill, because, even at the facility's maximum allowable daily tonnage, the landfill would have approximately fifty-five (55) years of remaining life (not including available expansions).

30.     The Authority failed and refused to work with WM Mobile Bay to expand the Service Area, despite the demonstrated benefits to the citizens of Mobile.  The Authority's failure to act on this issue was a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

31.     On or about September 28, 2012, WM Mobile Bay made a formal request for a price adjustment relating to its landfill operations under the Contract, pursuant to Section 6.6 of the Contract.  In addition, WM Mobile Bay requested a price adjustment relating to its transfer station operation, pursuant to Section 6.6 of the Contract.  WM Mobile Bay also requested reimbursement for betterment projects and unforeseen costs at the landfill, as well as cost increases due to changes in regulations, pursuant to Section 6.6 of the Contract.

32.     The Authority failed and refused to negotiate in good faith regarding WM Mobile Bay's reasonable requests for a price adjustment, and in fact, failed to provide any response to

WM Mobile Bay's request at all.  The Authority's refusal to negotiate in good faith constitutes a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations.

33.     On or about September 28, 2012, WM Mobile Bay wrote to the Authority requesting the Authority to work with WM Mobile Bay to expand the Service Area, providing information requested by the Authority to justify the expansion.  This information demonstrated that the Service Area expansion was also beneficial to the citizens of Mobile by preserving or increasing revenues to the Authority without increasing any costs.   The information also demonstrated that the Service Area expansion would have no detrimental effect on the long-term viability of the landfill, because, even at the facility's maximum allowable daily tonnage, the landfill would have approximately fifty-five (55) years of remaining life (not including available expansions).  WM Mobile Bay repeated its warning to the Authority, which WM Mobile Bay had been communicating for many years, that Advanced Disposal's Turkey Trot landfill in Washington County was able to compete for WM Mobile Bay's tonnage in Mobile County, but that WM Mobile Bay could not compete against that landfill outside of Mobile County. Therefore, the tonnage at the Authority's landfill and the resulting revenues to the citizens of Mobile were declining.   Nonetheless, the Authority refused to negotiate or otherwise act to expand the Service Area.

34.     The Authority failed and refused to work with WM Mobile Bay to expand the Service Area, despite the demonstrated benefits to the citizens of Mobile.  The Authority's failure to act on this issue was a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

35.     On or about July 29, 2013, WM Mobile Bay communicated to the Authority in writing, setting forth a compromise request for a price adjustment relating to its landfill

operations under the Contract, pursuant to Section 6.6 of the Contract.  In addition, WM Mobile Bay requested a price adjustment relating to its transfer station operation, pursuant to Section 6.6 of the Contract.  WM Mobile Bay also requested reimbursement for betterment projects and unforeseen costs at the landfill, as well as cost increases due to changes in regulations, pursuant to Section 6.6 of the Contract.  On or about August 12, 2013, WM Mobile Bay formalized those requests to the Authority in writing.

36.    The Authority failed and refused to negotiate in good faith regarding WM Mobile Bay's reasonable requests for a price adjustment, and in fact, responded by threatening to declare WM Mobile Bay in material breach of the Contract for underpayments of royalties.  The Authority's threats and refusal to negotiate in good faith constitute a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

37.    On or about July 29, 2013, WM Mobile Bay communicated to the Authority in writing its request for an expansion of the Service Area, asking the Authority to work with WM Mobile Bay to expand the Service Area, and providing information to justify the expansion. This information was based upon earlier communications to the Authority that demonstrated that the Service Area expansion was beneficial to the citizens of Mobile by increasing revenues to the Authority without increasing any costs, and also demonstrated that the Service Area expansion would have no detrimental effect on the long-term viability of the landfill, because, even at the facility's maximum allowable daily tonnage, the landfill would have approximately fifty-five (55) years of remaining life (not including available expansions).  On or about August 12, 2013, WM Mobile Bay formalized those requests to the Authority in writing.

38.    The Authority failed and refused to work with WM Mobile Bay to expand the Service Area, despite the demonstrated benefits to the citizens of Mobile.  The Authority's

failure to act on this issue was a breach of its Covenant of Good Faith and Fair Dealing and a material breach of its obligations under the Contract.

**COUNT I**
**BREACH OF CONTRACT RELATING TO PRICE**
**ADJUSTMENTS FOR LANDFILL DEPOSITS**

39.     Plaintiff incorporates the allegations in paragraphs 1-38 above as if fully set forth herein.

40.     The Authority had a contractual obligation to negotiate in good faith in response to WM Mobile Bay's reasonable requests for price adjustments reflecting changes in the cost of doing business at the subject landfill.

41.     The Authority failed and refused to fulfill its contractual duty to negotiate in good faith in response to WM Mobile Bay's formal requests for price adjustments in 2010, 2011, 2012, 2013, and otherwise, which is a material breach of its obligations under the Contract.

42.     WM Mobile Bay has been damaged by the Authority's failure to negotiate in good faith in that it has incurred increased costs in the management and operation of the subject landfill without receiving a corresponding price adjustment pursuant to the terms of the Contract.

WHEREFORE, Plaintiff demands judgment against Defendant for the increased costs of managing the subject landfill in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

**COUNT II**
**BREACH OF CONTRACT RELATING TO PRICE**
**ADJUSTMENTS FOR TRANSFER STATION**

43.     Plaintiff incorporates the allegations in paragraphs 1-42 above as if fully set forth herein.

10

44.     The Authority had a contractual obligation to negotiate in good faith in response to WM Mobile Bay's reasonable requests for price adjustments reflecting changes in the cost of transferring and hauling the City of Mobile's waste at and from the transfer station to the landfill.

45.     The Authority failed and refused to fulfill its contractual duty to negotiate in good faith in response to WM Mobile Bay's formal requests for price adjustments in 2010, 2011, 2012, 2013, and otherwise, which is a material breach of its obligations under the Contract.

46.     WM Mobile Bay has been damaged by the Authority's failure to negotiate in good faith in that it has incurred increased costs in the management and in the hauling of solid waste from the transfer station to the landfill without receiving a corresponding price adjustment pursuant to the terms of the Contract.

WHEREFORE, Plaintiff demands judgment against Defendant for the increased costs of managing the City of Mobile's waste at and from the transfer station to the landfill in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT III
## BREACH OF CONTRACT RELATING TO
## REIMBURSEMENTS FOR CAPITAL EXPENDITURES

47.     Plaintiff incorporates the allegations in paragraphs 1-46 above as if fully set forth herein.

48.     The Authority had a contractual obligation to negotiate in good faith in response to WM Mobile Bay's reasonable requests for reimbursements for capital expenditures.

49.     The Authority failed and refused to fulfill its contractual duty to negotiate in good faith in response to WM Mobile Bay's formal requests for reimbursements for capital

expenditures in 2010, 2011, 2012, 2013, and otherwise, which is a material breach of its obligations under the Contract.

50.    WM Mobile Bay has been damaged by the Authority's failure to negotiate in good faith for reimbursements for capital expenditures in that it has incurred substantial costs for capital expenditures without reimbursement pursuant to the terms of the contract.

WHEREFORE, Plaintiff demands judgment against Defendant for reimbursements for capital expenditures in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

**COUNT IV**
**BREACH OF CONTRACT RELATING TO REIMBURSEMENTS**
**FOR INCREASED COSTS DUE TO CHANGES IN LAWS AND REGULATIONS**

51.    Plaintiff incorporates the allegations in paragraphs 1-50 above as if fully set forth herein.

52.    The Authority had a contractual obligation to reimburse WM Mobile Bay for increased costs due to changes in laws and regulations.

53.    The Authority failed and refused to fulfill its contractual duty to reimburse WM Mobile Bay for increased costs due to changes in laws and regulations in 2010, 2011, 2012, 2013, and otherwise, which is a material breach of its obligations under the Contract.

54.    WM Mobile Bay has been damaged by the Authority's failure to reimburse WM Mobile Bay in that it has incurred increased costs due to changes in laws and regulations without reimbursement pursuant to the terms of the Contract.

WHEREFORE, Plaintiff demands judgment against Defendant for the increased costs due to changes in laws and regulations in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT V
## BREACH OF CONTRACT RELATING TO
## REQUESTS FOR SERVICE AREA EXPANSION

55.     Plaintiff incorporates the allegations in paragraphs 1-54 above as if fully set forth herein.

56.     The Authority had a contractual obligation to work with WM Mobile Bay to expand the Service Area, thereby increasing revenues to the Authority and benefiting the citizens of Mobile.

57.     The Authority failed and refused to work with WM Mobile Bay in response to requests in 2011, 2012, 2013, and otherwise, for expansions to the Service Area, which is a material breach of its obligations pursuant to the terms of the Contract.

58.     WM Mobile Bay has been damaged by the Authority's material breach in that it has lost profits that would have been available to it under an expanded Service Area.

WHEREFORE, Plaintiff demands judgment against Defendant for lost profits in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT VI
## BREACH OF WARRANTY OF GOOD FAITH AND FAIR DEALING

59.     Plaintiff incorporates the allegations in paragraphs 1-58 above as if fully set forth herein.

60.     The Authority had a contractual obligation to perform all of its obligations consistent with the standards of "good faith" and "fair dealing," pursuant to Section 1.31 of the Contract.

61.     The Authority breached its Covenant of Good Faith and Fair Dealing by failing to negotiate with WM Mobile Bay in response to reasonable requests for price adjustments in 2010, 2011, 2012, 2013, and otherwise, due to increased costs of managing the subject landfill.

62.     The Authority further breached its Covenant of Good Faith and Fair Dealing by failing to negotiate in good faith in response to WM Mobile Bay's reasonable requests in 2010, 2011, 2012, 2013, and otherwise, for price adjustments relating to increased costs of operating the transfer station and hauling solid waste from the transfer station to the landfill.

63.     The Authority further breached its Covenant of Good Faith and Fair Dealing by failing to negotiate in good faith in response to WM Mobile Bay's reasonable requests in 2010, 2011, 2012, 2013, and otherwise, for reimbursements for capital expenditures for the subject landfill.

64.     The Authority further breached its Covenant of Good Faith and Fair Dealing by refusing to reimburse WM Mobile Bay for increased costs resulting from changes in laws and regulations during the term of the Contract.

65.     The Authority further breached its Covenant of Good Faith and Fair Dealing by refusing to work with WM Mobile Bay for expansion of its Service Area, despite demonstrated benefits to the citizens of Mobile.

66.     WM Mobile Bay has been damaged by the Authority's breaches of its Covenant of Good Faith and Fair Dealing in that it has incurred additional costs and was entitled to additional revenue for the operation of the subject landfill, the operation of the transfer station, the hauling of solid waste from the transfer station to the landfill, capital expenditures at the subject landfill, increased costs due to changes in laws and regulations, and lost profits available to it under an expanded Service Area.

14

WHEREFORE, Plaintiff demands judgment against Defendant in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT VII
## BREACH OF INDEMNIFICATION OBLIGATION

67.     Plaintiff incorporates the allegations in paragraphs 1-66 above as if fully set forth herein.

68.     The Authority has a contractual obligation to indemnify and hold harmless WM Mobile Bay from all liability, loss, costs and expenses from conditions that existed at the subject landfill as of or relating to periods prior to the Commencement Date of the Contract.

69.     Certain contamination exists at the subject landfill that relates to periods prior to the Commencement Date.

70.     WM Mobile Bay has been required to expend funds for such conditions that existed at the subject landfill prior to the Commencement Date, but has not been reimbursed by the Authority pursuant to the terms of the Contract.

71.     WM Mobile Bay is entitled to reimbursement from the Authority for all expenses incurred in connection with such contamination.

WHEREFORE, Plaintiff demands judgment against Defendant for expenses made in connection with contamination that existed at the landfill prior to the Commencement Date of the Contract in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT VIII
## DECLARATORY JUDGMENT REGARDING SECTION 6.2

72.     Plaintiff incorporates the allegations in paragraphs 1-71 above as if fully set forth herein.

73.     The Contract includes the following provision for the payment of royalties by WM Mobile Bay to the Authority:

> The Contractor agrees to pay the Authority royalties in the amount of 5% of the gross revenue received by the Contractor from all Solid Waste deposited at the Landfill by the City or by third parties during the term of this Contract. This royalty shall be payable quarterly, based on gate proceeds, out of proceeds actually received by Contractor.

(Contract, Section 6.2.)

74.     On or about August 12, 2013, the Authority presented WM Mobile Bay with correspondence declaring it to be in material breach and default of Section 6.2 of the Contract for allegedly under-reporting volume of waste deposited at the landfill and allegedly under-paying royalties pursuant to Section 6.2 of the Contract.

75.     The Authority's correspondence demands payment of amounts it claims to be due within ninety (90) days of the date of the letter or the Authority will terminate the Contract and assume control over the operation of the landfill.

76.     There exists a justiciable controversy over the interpretation of Section 6.2 of the Contract, pursuant to 28 U.S.C. § 2201 and Ala. Code § 6-6-223, and the Court may determine the construction of that contractual provision, as well as the legal rights and obligations of the parties thereunder.

WHEREFORE, Plaintiff demands a declaratory judgment against Defendant that the Plaintiff is not obligated to make royalty payments on volumes of waste that the Plaintiff and/or one of its hauling affiliates deposits at the subject landfill, that the royalties are only payable out of proceeds actually received by Plaintiff, and any other and different relief to which Plaintiff may be entitled, plus costs and attorney fees, pursuant to the Contract.

## COUNT IX
## REIMBURSEMENT FOR OVERPAYMENT

77.     Plaintiff incorporates the allegations in paragraphs 1-76 above as if fully set forth herein.

78.     On or about August 12, 2013, the Authority presented WM Mobile Bay with correspondence declaring it to be in material breach and default of Section 6.2 of the Contract for allegedly under-reporting volume of waste deposited at the landfill and allegedly under-paying royalties pursuant to Section 6.2 of the Contract.

79.     The letter threatened WM Mobile Bay with termination of the contract unless it paid the disputed royalties within ninety (90) days of the date of the letter.

80.     The threats in the Authority's letter constitute economic duress and business compulsion, which forced WM Mobile Bay to choose between paying the disputed royalties or else face the termination of its contractual rights.

81.     For the sole purpose of preserving its contractual rights, WM Mobile Bay involuntarily made payment of the disputed royalties in the amount of $159,153.35 on November 8, 2013.

82.     Said payment represents an overpayment of royalties, because it consists of royalties on solid waste deposited at the subject landfill by WM Mobile Bay or one of its hauling affiliates, but the Contract does not require the payment of royalties to the Authority for solid waste deposited by WM Mobile Bay or one of its hauling affiliates.

83.     WM Mobile Bay is entitled to be reimbursed for the overpayment of royalties that it was forced to pay by the economic duress and business compulsion imposed by the Authority.

WHEREFORE, Plaintiff demands judgment against Defendant for the overpayment in the amount of $159,153.35, plus interest, costs, and attorney fees, pursuant to the Contract.

## COUNT X
## BREACH OF CONTRACT RELATING TO
## EXCLUSIVE DISPOSAL RIGHTS

84.     Plaintiff incorporates the allegations in paragraphs 1-83 above as if fully set forth herein.

85.     The Contract includes the following provision obligating the Authority to dispose of all of the City of Mobile's solid waste at the Chastang Landfill:

> The Authority agrees . . . to dispose at the New Landfill of all the City of Mobile Solid Waste generated within the Service Area.

(Contract, Section 5.2.)  By definition, this Solid Waste includes all construction and demolition waste, as well as household waste, commercial waste, and yard clippings and trimmings.

86.     The Authority has breached the Contract by directing construction and demolition waste, as well as certain household waste, commercial waste, and yard clippings and trimmings to a separate facility, thereby depriving WM Mobile Bay of the revenue that would be generated by the disposal of such waste at the Chastang Landfill.

87.     On August 23, 2013, WM Mobile Bay wrote to the Authority demanding reasonable assurances from the Authority that it will abide by the terms of the Contract by continuing to direct all Solid Waste, as defined by that Contract, to the Chastang Landfill for disposal.

88.     The Authority has failed and refused to provide reasonable assurances, and in fact, continues to breach the Contract by directing construction and demolition waste, as well as certain household waste, commercial waste, and yard clippings and trimmings to a separate facility in violation of the terms of the Contract.

WHEREFORE, Plaintiff demands judgment against Defendant for lost revenues in an amount to be determined by the trier of fact, plus interest, costs, and attorney fees, pursuant to

the Contract.  Plaintiff further demands reasonable assurances from Defendant that Defendant will abide by the terms of the Contract by directing all Solid Waste, as defined by the Contract, to the Chastang Landfill for disposal.

**COUNT XI**
**DECLARATORY JUDGMENT REGARDING SECTIONS 1.4 AND 6.6**

89.     Plaintiff incorporates the allegations in paragraphs 1-88 above as if fully set forth herein.

90.     Section 1.4 of the Contract requires the Authority to work with WM Mobile Bay to expand the Service Area.

91.     Section 6.6 of the Contract requires the Authority to negotiate in good faith in response to WM Mobile Bay's requests for price adjustments reflecting changes in the cost of doing business at the subject landfill.

92.     Section 6.6 of the Contract also requires the Authority to negotiate in good faith in response to WM Mobile Bay's requests for price adjustments reflecting changes in the cost of operating the transfer station and hauling solid waste from the transfer station to the landfill.

93.     Section 6.6 of the Contract also requires the Authority to negotiate in good faith in response to WM Mobile Bay's requests for reimbursements for capital expenditures.

94.     Section 6.6 of the Contract also requires the Authority to reimburse WM Mobile Bay for increased costs due to changes in laws and regulations.

95.     The Authority has failed and refused to negotiate in good faith in response to WM Mobile Bay's requests for price adjustments and cost reimbursements.  The Authority has further failed and refused to work with WM Mobile Bay for expansion of its Service Area.

96.     There exists a justiciable controversy over the interpretation of Sections 1.4 and 6.6 of the Contract, pursuant to 28 U.S.C. § 2201 and Ala. Code § 6-6-223, and the Court may

19

determine the construction of those contractual provisions, as well as the legal rights and obligations of the parties thereunder.

WHEREFORE, Plaintiff demands a declaratory judgment that Plaintiff is entitled to an increased disposal and transfer station rate in an amount to be determined by this Court, and that Defendant is obligated to negotiate in good faith in response to WM Mobile Bay's requests for rate adjustments and reimbursements.  Plaintiff further demands a declaratory judgment that Defendant is contractually obligated to work with Plaintiff to expand the Service Area.  Plaintiff demands any other and different relief to which Plaintiff may be entitled, plus costs and attorney's fees, pursuant to the Contract.

**PLAINTIFF HEREBY DEMANDS TRIAL BY A STRUCK JURY.**

/s/ Jaime W. Betbeze
Jaime W. Betbeze (BETBJ5982)
jbetbeze@maynardcooper.com

D. Trice Stabler (STABD3501)
tstabler@maynardcooper.com

MAYNARD, COOPER & GALE, P.C.
11 North Water Street
RSA Battlehouse Tower, Suite 27000
Mobile, Alabama 36602

Attorneys for Plaintiff, WM Mobile Bay
Environmental Center, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2014, I electronically filed the forgoing

Amended Complaint with the Clerk of Court using the CM/ECF filing system, which will send

notification of such filing to the following attorney of record:

James B. Rossler, Esq.
P.O. Drawer 2164
Mobile, AL  36652

/s/ Jaime W. Betbeze
OF COUNSEL