# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WM MOBILE BAY ENVIRONMENTAL CENTER, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-0434-KD-N** |
| | ) | |
| **THE CITY OF MOBILE SOLID WASTE AUTHORITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This action is before the Court on the Defendant City of Mobile Solid Waste Authority's renewed Rule 50(b) motion and alternative Rule 59(a) motion for a new trial, memorandum in support, notice, and supplement (docs. 187, 188, 189, 193), Plaintiff WM Mobile Bay Environmental Center, Inc.'s response (doc. 191), and Defendant's reply (doc. 192). Upon consideration and for the reasons set forth herein Defendant's motions are DENIED with the exception of the motions as to Count X, which remain under submission.

I. <u>Renewed motion for judgment as a matter of law</u>.

Rule 50(b) of the Federal Rules of Civil Procedure provides for renewing the motion for judgment as a matter of law after trial and for an alternative motion for a new trial. The Rule sets forth as follows:

> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may

include an alternative or joint request for a new trial under Rule 59. In ruling on
the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

"Judgment as a matter of law is appropriate only when the facts and inferences
[construed in the light most favorable to the non-moving party] point so overwhelmingly in
favor of one party that reasonable people could not arrive at a contrary verdict." *Smith v. City of
New Smyrna Beach*, 588 Fed.Appx. 965, 974 (11th Cir. 2014) (citation omitted). "When a court
considers a motion for judgment as a matter of law—even after the jury has rendered a
verdict—only the sufficiency of the evidence matters. The jury's findings are irrelevant."
*Connelly v. Metropolitan Atlanta Rapid Transit Authority,* 764 F. 3d 1358, 1363 (11th Cir.
2014) (citations omitted).

"The question before the district court regarding a motion for judgment as a matter of
law remains whether the evidence is 'legally sufficient to find for the party on that issue.' "
*Collins v. Marriott International, Inc.,* 749 F.3d 951, 957 (11th Cir. 2014) (quoting *Chaney v.
City of Orlando,* 483 F.3d 1221, 1227 (11th Cir.2007) (quoting Fed. R. Civ. P. 50(a)(1)). "[T]he
court should review all of the evidence in the record," but in doing so, "the court must draw all
reasonable inferences in favor of the nonmoving party, and it may not make credibility
determinations or weigh the evidence." *Collins,* 749 F. 3d at 957 (quoting *Reeves v. Sanderson
Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000)). Thus, a
jury verdict "must be left intact if there is evidence from which the decision maker ...
reasonably could have resolved the matter the way it did." *Atchafalaya Marine, LLC v. National*

*Union Fire Ins. Co. of Pittsburgh,* 959 F.Supp.2d 1313, 1325 (S.D. Ala. 2013) (quoting

*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir.2008)).  Moreover,

"that Rule 50(b) uses the word 'renewed' makes clear that a Rule 50(b) motion should be

decided in the same way it would have been decided prior to the jury's verdict, and that the

jury's particular findings are not germane to the legal analysis." *Connelly*, 764 F. 3d. at 1363

(quoting *Chaney v. City of Orlando, Fla*., 483 F.3d 1221, 1228 (11th Cir. 2007)).

    A. <u>Defendant's argument that there was no substantial evidence supporting the verdict
for Plaintiff.</u>

    Defendant argues that "there was no substantial evidence supporting the verdict for the

plaintiff."  (Doc. 187, p. 1, ¶ 1)   In support, Defendant "incorporates each ground stated" in its

oral motions for judgment as a matter of law made during trial. (Id.) Thus, to the extent that the

renewed Rule 50(b) motion is based upon incorporation of arguments made in support of the

oral motions, and not on specific arguments raised in the brief in support of the renewed motion,

the renewed motion is denied based on grounds previously stated on the record.

    B. <u>Defendant's renewed motion as to Counts I, III, and IV.</u>

    Defendant argues that it is entitled to judgment as a matter of law as to the breach of

contract claims raised in Counts I regarding the price adjustment for waste disposal at the

landfill, Count III regarding reimbursement for capital expenditures, and Count IV regarding

reimbursement for increased operating costs due to changes in laws, regulations, and ordinances

effective after the date of the contract.  Defendant points out that the 1993 contract made

Plaintiff responsible for documenting, to Defendant's reasonable satisfaction, the basis for a rate

adjustment and reimbursement. Defendant argues that the evidence at trial, specifically the

testimony of Plaintiff's corporate representative, established that the documentation necessary

to support a rate adjustment and reimbursement and requested by Defendant was not produced

before the lawsuit was filed.  Thus, Defendant argues that Plaintiff failed as a matter of law to comply with the terms of the contract, and the verdict for Plaintiff on Counts I, III and IV cannot stand.

Upon consideration, and for the reasons stated in Plaintiff's response, the Court finds that Defendant's renewed motion as to Counts I, III, and IV is due to be denied. Specifically, there was sufficient evidence of the history of the formal written requests and supporting documentation that was provided to Defendant from September 30, 2010 through the August 2013 board meeting, from which a reasonable jury could find that Defendant breached the contract and failed to negotiate in good faith.  Accordingly, because a jury's verdict "must be left intact if there is evidence from which the decision maker ... reasonably could have resolved the matter the way it did," *Atchafalaya Marine, LLC,* 959 F.Supp.2d at 1325, the renewed motion as to these Counts is denied.

C. Sufficiency of the evidence in support of Plaintiff's claim for lost profits in Count X

Defendant renews its motion for judgment as a matter of law on basis that there was not substantial evidence supporting the verdict for Plaintiff's claim for lost profits resulting from Defendant's diversion of waste to other landfills.

At trial, Michael Bass, Plaintiff's Financial Analyst testified that as an employee of Plaintiff, he prepared and reviewed Plaintiff's financial statements and financial forecasts and routinely reviewed historical financial data including profitability.  Bass testified that to calculate the lost profits from the diversion of waste, for the period of September 2007 through April 2011, he used the tonnage of waste sent to other facilities from a report provided by the City of Mobile.  Specifically, he multiplied the tonnage times the tipping rates in effect and came up with gross revenue that would have been received had the waste been delivered to

Plaintiff's landfill.  For the remainder of 2012 through 2014, Bass did not have a report from the City as to the tonnage.  Rather, he "took a monthly average" from the September 2007 through April 2012 time period and "multiplied that to the remaining months of 2012, and the 12 months of 2013 and the 12 months of 2014" to compute a gross revenue. (Doc. 183, p. 224-234)

Relying on Plaintiff's monthly income statements to determine costs, Bass deducted only the incremental costs per ton that he believed would have been increased due to the additional tonnage – capping (putting a synthetic liner over the cells in the landfill), closure and post closure (maintenance after capping) and depletion (amortization of future costs for adding this tonnage including liners, excavation and cell construction) - and deducted the royalty owed to Defendant, to calculate the lost profits.  Bass testified that other costs were not deducted – fuel, equipment, labor (no additional employees would have been added nor any additional hours worked) because those fixed costs would not increase with additional tonnage.  (Doc. 183, p. 235-239)

Defendant argues that the Court should discredit Bass' testimony.  However, credibility determination are reserved to the jury and the Court should not "weigh conflicting evidence and inferences". *Daniec v. Boatarama, Inc.*, 588 Fed.Appx. 947, 949 (11th Cir. 2014) (citation omitted).  As previously stated, the issue before the Court on a motion for judgment as a matter of law is whether the evidence is " 'legally sufficient to find for the party on that issue.' " *Collins,* 749 F.3d at 957 (citations omitted).  Further, the Court must draw "all reasonable inferences in favor of" Plaintiff and not make any "credibility determinations or weigh the evidence." *Collins,* 749 F. 3d at 957 (citation omitted).

In this action, Plaintiff claimed lost profits as a result of Defendant's failure to perform under the contract – deposit all City of Mobile solid waste at Plaintiff's landfill.  Lost profits

have been interpreted as the net profits after deducting costs that would have been incurred had the party in breach actually performed under the contract. *International Paper Company v. Madison Oslin Incorporated*, 985 So. 2d 879, 890-891 (Ala. 2007).   To recover lost profits, Plaintiff must allege and prove "not only (a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him thereof).  Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract." *Integraph Corp. v. Bentley Systems, Inc.,* 58 So. 3d 63, 78 (Ala. 2010) (quoting *Ex parte Woodward Construction & Design, Inc.,* 627 So. 2d 393, 394 (Ala. 1993).

As a general rule, when "damages for lost profits may not be calculated easily or with mathematical certainty, the rule of 'reasonable certainty' maintains that damages for lost profits can still be recovered if the defendant's wrong proximately caused them."  *Lee v. Houser,* 148 So. 3d 406, 422 (Ala. 2013).  However, "[l]ost profits are recoverable only when it reasonably or definitely appears that they would have been made if the contract had been performed, and where it reasonably and definitely appears that their loss necessarily followed the breach." *International Paper Company*, 985 So. 2d at 887-888.

With this in mind, the Court has reviewed and considered Bass's testimony as summarized above, and finds that the jury verdict based on sufficiency of the evidence "must be left intact [because] there is evidence from which the decision maker ... reasonably could have resolved the matter the way it did", specifically awarding only $3 million for lost profits instead of the $8.7 million claimed after deduction of costs.  *Atchafalaya Marine, LLC,* 959 F.Supp.2d at 1325. *Cf. International Paper Company,* 985 So. 2d at 886 (jury awarded the calculated lost revenue without subtraction for costs that defendant likely would have expended, a "choice"

that "was improper under the law.").  Clearly, the jury evaluated Bass' testimony and his spreadsheet and disagreed to some extent with his determination of costs that were due to be subtracted to arrive at lost profits.  This was no doubt based on Defendant's cross-examination questioning the failure to subtract certain costs. As a result, Plaintiff received only thirty-four percent (34%) of requested lost profits.  The Court finds that the evidence supports to a reasonable certainty the award of $3 million for lost profits.

D. <u>Admissibility of Michael Bass's testimony under the Federal Rules of Evidence</u>

Defendant argues that the testimony of Michael Bass, Plaintiff's Financial Analyst, was improperly admitted because it did not meet the foundation requirements in Rule 602,[1] 701,[2] or 702[3] of the Federal Rules of Evidence. Defendant states that review of the trial transcript shows that Bass "likely" testified on personal knowledge as required by Rule 602, regarding the unadjusted tons and dollars involved in waste handled, which was obtained from Defendant's data.  However, Defendant argues that when Bass testified regarding cost adjustments and

---

[1] "Need for Personal Knowledge, A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703." Fed.R.Evid. 602.

[2] "Opinion Testimony by Lay Witnesses.  If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

[3] "Testimony by Expert Witnesses. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

calculation of the damages for lost profits, he no longer testified upon personal knowledge, but instead relied upon output from Plaintiff's S-Base computer program.  In that regard, Defendant argues that Bass's testimony is not admissible because Plaintiff failed to make a foundation that Bass had personal knowledge of the S-Base system such that his testimony could be admitted under Rule 602 or Rule 701.[4] Defendant concludes that exclusion of Bass's testimony renders Plaintiff's claim for damages for lost profits without evidentiary support, and therefore, Defendant is entitled to judgment as a matter of law.

Upon consideration, and for the specific reasons addressed in Plaintiff's response, the Court finds that Defendant's objection to Bass's testimony based on the Federal Rules of Evidence is without merit.  Bass testified that he prepared and reviewed financial statements and financial forecasts and reviewed historical financial data including profitability.  He also testified that to calculate the lost profits he relied upon monthly income statements stored on the S-Base computer database, which he identified as storing Plaintiff's financial data.  As Plaintiff points out, the test for admissibility under Rule 602 is whether the jury, as a reasonable trier of fact, could believe that Bass had personal knowledge of the facts – the costs adjustments and lost profits calculations – to which he testified.  The Court finds that Bass's testimony was sufficient evidence from which the jury could reasonably believe that he had personal knowledge of the Plaintiff's finances.  *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony") The Court further finds that to the

---

[4]  Although Rule 701 does not specifically state that personal knowledge is required, Defendant argues that the district court in *Parrott v. PNC Bank, NA,* 986 F. Supp 2d 1263 (N.D. Ala. 2013) observed that the Rule 701 requirement that a lay witness may offer an opinion only "if it is rationally based on the witness's perception" Fed. R. Evid. 701, "means both that the witness have perceived something first hand and also that there be a truly rational basis for the opinion." (Doc. 188, p. 24) (citing *Parrott,*  at 1271).

extent that Bass's testimony could be characterized as lay opinion testimony, there was an adequate foundation. Specifically, the evidence indicates that through Bass' position as a financial analyst and his use of the S-Base computer program,[5] he had a reasonable opportunity to form an opinion as to the costs adjustments and the lost profits.  Moreover, Bass did not testify as an expert witness.  Accordingly, the renewed motion as to the admissibility of Bass's testimony under the Federal Rules of Evidence is denied.

> E. Admissibility of Michael Bass's testimony – Disclosure obligations under Rule 26

Defendant argues that it is entitled to judgment as a matter of law as to damages for lost profits claimed as to Count X because Plaintiff violated the damages disclosure provisions of Fed. R. Civ. P. 26(a)(1)(A)(iii) and Rule 26(e), by failing to timely and adequately disclose its claim for lost profits. (Doc. 187, p. 1, ¶ 4; Doc. 188, p. 9-22)  Defendant argues that exclusion of Bass's testimony is an appropriate sanction under Fed. R. Civ. P. 37(c)(1) because Plaintiff cannot meet either of the exceptions to its operation: That the late disclosure was substantially justified or that it was harmless.

Rule 26 places a "duty to disclose" upon the parties and states that, with certain exceptions not relevant here, "a party must, without awaiting a discovery request" provide certain "initial disclosures" to the opposing party.  Fed. R. Civ. P. 26(a)(1). Among those are

> a computation of each category of damages claimed by the disclosing party - -
> who must also make available for inspection and copying as under Rule 34 the
> documents or other evidentiary material, unless privileged or protected from
> disclosure, on which each computation is based, including materials bearing on
> the nature and extent of injuries suffered[.]

---

[5] The Court finds no merit to Defendant's challenge of Bass' reliance on information in the S-Base system.  The S-Base system is simply a database from which accounting information is stored and retrieved.

Fed. R. Civ. P 26(a)(1)(A)(iii).

In relevant part, Rule 26(e) requires that "a party who has made a disclosure under Rule 26(a). . .  must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed R. Civ. P. 26(e)(1)(a).

Rule 37(c)(1) provides for a parties failure to disclose or supplement its disclosures and states that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was substantially justified or harmless." *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.,* 725 F. 3d 1377, 1381 (11th Cir. 2013); *Mitchell v. Ford Motor Company,* 318 Fed. Appx. 821, 824 (11th Cir. 2009) (citation omitted) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.").

Previously, in Defendant's motion in limine and motion to strike for failure to comply with Rule 26, Defendant stated that in January 2014, Plaintiff initially disclosed as follows:

> WM Mobile Bay has no information regarding the amount of the waste that was diverted from the Chastang Landfill and wrongfully directed to another location: therefore, it cannot calculate the amount of lost revenue due to this particular breach of the parties' contract until the discovery has been completed.

(Doc. 133, p. 1)

Defendant also pointed out that Plaintiff did not supplement this damages disclosure to

add lost profits as a category of damages in it's November 2014 pretrial disclosures, and did not supplement in the joint pretrial documents filed December 2014. Instead, in the disputed facts section of the joint pretrial document, Plaintiff disclosed a damages amount for gross revenue. Defendant argued that gross revenue was an improper measure of damages under Count X and further asserted that Plaintiff had failed to provide a computation of damages as required by Rule 26(a). (Doc. 133) The motion was carried to trial and later denied.

1. Whether the late disclosure was substantially justified.

Defendant argues that the January 2015 supplemental disclosure was late by almost a year and that Plaintiff offered no substantial justification for its late supplementation. Defendant points out that Plaintiff possessed the documents, which support its lost profits calculation, in that they were used as deposition exhibits in July 2014, but did not supplement to disclose this theory of damages until January 2015. Defendant argues that Plaintiff cannot shift the responsibility to Defendant by arguing that Defendant should have explained to Plaintiff the fault in its damages theory and helped cure its disclosure defaults by requesting the disclosure or moving to compel. Defendant points out that in the adversarial context of litigation, counsel has no duty to assist the opposing party.

In response, Plaintiff does not offer any justification as to why it did not supplement its initial disclosure until January 2015. Instead, Plaintiff asserts that it made clear its intent to seek damages for diversion of wastes early in the litigation, citing its first amended complaint wherein it sought "lost revenue" as to Count X. Plaintiff also states that it did not initially disclose a computation of damages because it did not initially know the amount of diverted wastes. Rather, only after obtaining discovery from the City of Mobile was Plaintiff able to determine the tonnage. Plaintiff then calculated the lost revenue and moved for summary

judgment in August 2014.  The Court notes that on motion for summary judgment, Plaintiff

sought "$12,139,841.00 of lost revenue, net of the 5% royalty."[6]  Plaintiff did not assert a lost

profits theory of damages at the summary judgment stage.

With the advantage of hindsight, the Court finds that Plaintiff has not provided

substantial justification why, after August 2014 when it obtained discovery from the City of

Mobile, it did not, until January 2015, supplement or correct its initial disclosures to include

"lost profits" as a category of damages.  Plaintiff asserts that Defendant was aware that Plaintiff

was claiming lost revenue damages by way of the motion for summary judgment filed in

August 2014.  However, this clearly did not meet the disclosure requirement of Rule 26(e). In

the motion for summary judgment, Plaintiff claimed "lost revenue" as opposed to "lost profits"

as to Count X.  Plaintiff has failed to prove that the late disclosure was substantially justified.

2. <u>Whether the late disclosure was harmless.</u>

Defendant argues that Plaintiff's late disclosure deprived it of time to analyze the lost

profits claim and conduct discovery, including deposing Bass to discover how certain costs in

the spreadsheet were generated. Defendant also argues it was deprived of the opportunity to

depose Plaintiff's accountant as to the cost accounting, and engage a technical witness such as

an accountant or other rebuttal witness on the costs issue. As a result of discovery violations,

Defendant states that it was precluded from an effective cross-examination because it "entered

the trial only a few days after being presented with a 'spreadsheet' indicating Plaintiff's damage

claim was for 'gross profit,' without any supporting documentation, and with no notice of a

---

[6] Plaintiff sought judgment in the total amount of  "$12,139,841.00, plus interest and costs". (Doc. 80, p. 50)  This amount was the result of multiplying the tonnage obtained from the City's records by the disposal rates in effect, and "representing $12,139,841.00 of lost revenue, net of the 5% royalty", but without deduction for any costs of handling the additional tonnage. (Doc. 80, p, 28, 40, 50)

cockeyed 'cost deduction' formula." (Doc. 188, p. 20)

Defendant also argues that the supplemental disclosure was misleading and prejudicial. Defendant points out that Plaintiff disclosed it was seeking "lost profits" of $8.7 million but presented a spreadsheet identifying "gross profit" of $8.7 million. This led Defendant to believe that Plaintiff continued to pursue an "erroneous theory of recovery" and thus Defendant developed its strategy based on that premise.[7]

Plaintiff responds that if Defendant believed it was using an inappropriate measure of damages, Defendant could have conducted discovery in that regard, requested the information, questioned Plaintiff's witnesses during the depositions including Bass, requested the income statements, or moved to compel, instead of now seeking the disfavored drastic sanction under Rule 37 of exclusion of Bass's trial testimony.  In an effort to show admission of Bass' testimony was harmless, Plaintiff points out that the jury awarded $3 million, $5.7 million less than the $8.7 million in lost profits as testified by Michael Bass and requested at closing.

Upon consideration, the Court is withholding a determination of motions on the basis of the Rule 26 violation, until the parties have the opportunity to engage in settlement negotiations as to Count X.  Accordingly, Defendant's Rule 50(b) motion for judgment as a matter of law and alternative Rule 59(a) motion for new trial as to damages claimed in Count X, remain under submission.

By separate Order, the Court will refer Count X for mediation and set a time frame for completion of the mediation.  The mediation shall be conducted pursuant to this Court's Alternative Dispute Resolution Plan which is available on the Court's website.

---

[7]  In the second amended complaint, Plaintiff again claimed "lost revenue" as damages for the breach of contract alleged in Count X.

http://www.alsd.circ11.dcn/documents/index.cfm?docs=court_plans

II. Alternative motion for new trial.

A Rule 59 motion for a new trial may be granted in the discretion of the trial court where "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict[.]" *Atchafalaya Marine, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA.,* 959 F.Supp.2d 1313, 1325 (S.D. Ala. 2013) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001)).

Rule 59(a) provides a new trial and sets forth, in relevant part, as follows:

(a) In General. (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]

Fed. R. Civ. P. 59(a).

As to Count I, relating to price adjustments for landfill deposits, Defendant moves for a new trial and argues that there was no basis for the increased amount awarded by the jury. Defendant argues that this amount exceeded the amount testified to by Plaintiff's witness, exceeded the amount requested at closing, and was inconsistent with the Court's declaratory judgment wherein the Court set the disposal rates for landfill deposits during 2010-2015 at $25.43 per ton, a different rate than Plaintiff's expert witness - $27.39 per ton. (Doc. 187, p. 2-3, ¶¶ 2, 3)  Applying the former rate, Defendant argues that the maximum amount recoverable was $1,055,547.00, which is less than the verdict of $1,794,360.00.

In response, Plaintiff correctly notes that the Court set the disposal rate only for 2015.[8] Moreover, the jury was free to determine the rate that they believed to be appropriate. However, Plaintiff concedes that the jury's award was in excess of the amount requested in closing arguments, $1,369,771.00, and agrees to remittitur to that amount.

As to Count III, relating to reimbursement for capital expenditures, Defendant moves for a new trial on basis that no testimony in the record supported the verdict and judgment for $2,915,766.00, but to the contrary, the Plaintiff's witness initially testified as to damages of $872,253.00 which was expanded to $1,082,753.00, the amount requested at closing.  (Doc. 187, p. 3, ¶ 4)   In response, Plaintiff agrees that that the jury awarded more on Count III than requested at trial.  As a result, Plaintiff agrees to remittitur to the amount requested at closing, $1,082,753.00.

Generally, the decision whether to grant a remittitur on basis of an excessive damage award is within the discretion of the court. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990). If the circumstances require, the Court has "the inherent power to set aside the judgment or to direct the entry of an appropriate judgment by way of remittitur." *Id.* at 1319. "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."  *Sands v. Kawasaki Motors Corp. U.S.A.,* 513 Fed. Appx. 847, 855 (11th Cir. 2013)

---

[8] In Count XI, Plaintiff sought a declaratory judgment as to its entitlement to an increased disposal rate in an amount to be determined the Court. The Court found that the relief sought was equitable in nature, not an issue for the jury, severed this portion of Count XI for determination by the Court, and then found that $25.43 was an "appropriate current disposal rate." (Doc. 172)  Although the Court began its determination with the parties' last negotiated rate in 2010, the Court did not determine the appropriate rate for the years 2010 to 2014. (Id.) The Court determined that Plaintiff was "entitled to an increased disposal rate in the current amount of $25.43." (Doc. 177)

(quoting *Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1448 (11th Cir.1985)).

Upon consideration, of the evidence presented at trial, as well as the Plaintiff's acceptance that remittitur is appropriate as to the awards for Counts I and III, Defendant's alternative motion for new trial on these grounds is denied. However, the Court, by separate document, shall enter an amended judgment as to Count I in the amount of $1,369,771.00 and as to Count III in the amount of $1,082,753.00.

As to Defendant's remaining arguments, that the alternative motion for new trial should be granted for the same reasons as the motion for judgment as a matter of law, the alternative motion for new trial is denied for the same reasons that Defendant is not entitled to judgment as a matter of law. The evidence at trial was sufficient for a reasonable jury to find in favor of Plaintiff. Further, the verdicts are not against the great weight of the evidence.[9]

III. Conclusion

For the reasons set forth herein Defendant's motions are DENIED with the exception of the motions as to Count X, which remain under submission.

A final amended judgment shall issue after October 1, 2015.

DONE and ORDERED this the 13th day of August 2015.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[9] As explained *supra*, the Court withheld ruling on Defendant's Rule 59(a) motion for new trial as to Count X based on Plaintiff's failure to timely and adequately provide Bass' lost profits calculations.